**SO ORDERED.**

**SIGNED this 06 day of March, 2012.**

_____
Randy D. Doub
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:

| | |
|---|---|
| WILLIAM M. DUDLEY, | CHAPTER 7 |
| | CASE NUMBER: 11-00013-8-RDD |
| DEBTOR | |

| | |
|---|---|
| JOHN C. BIRCHER, III, Trustee | ADVERSARY PROCEEDING |
| | NUMBER: 11-00150-8-RDD |
| Plaintiff | |
| v. | |
| WILLIAM M. DUDLEY, | |
| Defendant | |

## ORDER DENYING DISCHARGE

Pending before the Court is the Complaint Objecting to Debtor William M. Dudley's Discharge, filed by John C. Bircher III, Trustee on May 4, 2011 (the "Complaint") and the Answer filed by William M. Dudley on June 15, 2011 (the "Answer"). The Court conducted a trial in New Bern, North Carolina on February 7, 2012 to consider the Complaint and the Answer.

**STATEMENT OF THE FACTS**

On January 3, 2011, William M. Dudley (the "Defendant") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Code"). On May 4, 2011, the Chapter 7 trustee in the Defendant's case, John C. Bircher, (the "Trustee") filed the Complaint objecting to the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(2) and (4). The Trustee claims the Defendant, with the intent to hinder, delay, or defraud an officer of the estate charged with custody of property under the Code, transferred, removed, destroyed, mutilated, or concealed property of the estate after the date of the filing of the bankruptcy petition. The Trustee also claims the Defendant knowingly and fraudulently, in connection with a case, made a false oath or account.

The Trustee's allegations are based on the Defendant's failure to list a horse trailer and certain tools in his petition. In the Defendant's petition, among other personal property listed in Schedule B, the Defendant included yard tools valued at $50.00, hand tools valued at $300.00, as well as a utility trailer valued at $800.00 but failed to list a horse trailer and other tools. The Trustee asserts that at the Section 341 Meeting of Creditors (the "341 Meeting") on February 2, 2011, the Defendant completed a form in which he certified that his bankruptcy schedules listed everything that he owned on the date he filed the bankruptcy petition. This form was signed under penalty of perjury and adopted as the Defendant's testimony at the 341 Meeting. Furthermore, at the 341 Meeting, the Trustee asked the Defendant if he realized that he completed the form under oath. The Defendant responded that he understood.

Later, during the 341 Meeting, the Defendant was questioned by his creditors. Prior to the filing of the bankruptcy petition, the Defendant had separated from his wife and the two were in the process of a divorce. The Defendant's spouse, Sandra C. Dudley, is listed as a creditor holding an unsecured non-priority claim in an unknown amount in Schedule F of the petition. At the 341

2

Meeting, Mrs. Dudley's attorney examined the Defendant. Based on information provided by Mrs. Dudley, her attorney asked the Defendant if he owned a horse trailer that was not listed in his schedules. The Defendant responded that he did in fact own a horse trailer. However, he explained the trailer had never been titled to him. Through further questioning it was revealed that the Defendant owned numerous tools that were being kept inside the horse trailer at the Defendant's father's house. The Defendant stated the tools included a grease gun, wrenches, a pressure washer, a generator, an air compressor, and a tool chest filled with tools. At the 341 Meeting, the Defendant estimated there was approximately $800.00 worth of tools inside the horse trailer.

At the trial on February 7, 2012, the Trustee presented evidence as to the oath the Defendant took when he asserted that his bankruptcy schedules completely listed all of his property.[1] The Trustee also introduced into evidence a questionnaire he uses at every 341 Meeting to gather information from debtors. The Defendant completed and signed the questionnaire under penalty of perjury on February 2, 2011.[2] The questionnaire asks: "Do your bankruptcy schedules list everything

---

[1] The B6 Declaration (Official Form 6) signed by the debtor as part of his schedules includes the following:

DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary of schedules, consisting of 22 sheets, and that they are true and correct to the best of my knowledge, information, and belief.

[2] The questionnaire presented by the Trustee states above the signature line:

> By my signature below and by my submission of this questionnaire to the Trustee, I acknowledge that the answers provided above are my own and that they are true and correct to the best of my knowledge and that I have answered these questions under penalty of perjury. I further understand that theses answers will be adopted as testimony in my 341 meeting to the same extent as if I had orally testified.

that you owned on the date that you filed your bankruptcy petition?" The Defendant circled "Yes." Later at the 341 Meeting, the Defendant was asked if he had any questions about the questionnaire and if he realized he signed it under oath. The Defendant responded that he had no questions and understood the form would be taken as his testimony under oath.

At the trial, Mrs. Dudley testified she reviewed the Defendant's petition and observed that numerous items of the Defendant's property, most noticeably a Fifth Wheel horse trailer, were missing from Schedule B. Mrs. Dudley testified that the Defendant used the Fifth Wheel horse trailer frequently to transport animals to 4-H livestock shows. Mrs. Dudley also testified that the Defendant failed to list the majority of the tools that were kept in a workshop behind their home when the two were married. Mrs. Dudley testified that she believed the Defendant removed the tools from the workshop sometime in the fall of 2010.

At the trial, the Trustee testified that he did not learn about the existence of the horse trailer and tools until the Defendant was questioned about the property at the 341 Meeting. The Trustee introduced a transcript of the 341 Meeting in which the Defendant admitted to Mrs. Dudley's counsel that he did not list the Fifth Wheel horse trailer worth about $2,000.00 in his petition because it was not titled to him. Transcript of 341 Hearing at 23, *In re Dudley*, No. 11-00013-8-RDD (Bankr. E.D.N.C. Feb. 2, 2011). The Trustee testified that at the 341 Meeting, the Defendant stated the horse trailer was parked in his father's backyard and contained tools that were previously stored in the workshop behind his former residence.[3] The Trustee testified that had counsel for Mrs. Dudley not questioned the Defendant about this property he would have never learned of it because the Debtor

---

[3] At the 341 Meeting, the Defendant stated the tools contained in the horse trailer included a grease gun, wrenches, a pressure washer, a generator, an air compressor, various tools, and a tool chest, all totaling approximately $800.00 in value. Transcript of 341 Hearing at 25-7, *In re Dudley*, No. 11-00013-8-RDD (Bankr. E.D.N.C. Feb. 2, 2011).

4

did not list it in the schedules. The Trustee also testified that after the 341 Meeting, the Defendant prepared a handwritten list of some three pages of items inside the horse trailer not previously listed in his schedules and amended his schedules to reflect the personal property.[4] The Trustee testified that the Defendant complied with all further requests.

The Trustee stated he hired an auctioneer to take possession of the horse trailer and other items. The auctioneer located the horse trailer and tools at the home of the Defendant's father. The Trustee testified that the Defendant's personal property was sold at auction to benefit the estate for a total of $6,917.50. This amount included the sale of a 2001 John Deere tractor that the Debtor listed in his original schedules for $4,000.00. In total, the horse trailer and the tools inside it were sold for $2,917.50.

The Defendant testified that he did not list the horse trailer on his petition because did not understand he was required to list it as his property. The Defendant stated he never received title to the horse trailer from its previous owner and was not aware that he was required to list it in his bankruptcy schedules because it was not properly titled to him.

The Defendant testified that sometime after he separated from Mrs. Dudley he returned to the marital home and discovered that the workshop in the backyard appeared to have been broken into and a lawnmower was missing. The Defendant explained that because he was afraid someone might steal the tools and other items in the workshop he loaded them in the horse trailer and took them to his father's house approximately two months before the date he filed the petition. The Defendant testified that he did not think of this property again until he was questioned about it by Mrs. Dudley's attorney at the 341 Meeting. The Defendant testified that on the day of the 341

---

[4] The Defendant amended Schedule B to include a 1991 Chaparral horse trailer and more than seventy other items.

5

Meeting, he was nervous and under a lot of stress resulting from the pending divorce. At the time he signed the Trustee's questionnaire at the 341 Meeting, the Defendant stated he believed the assertion that he listed all of his property on his schedules was truthful. The Defendant acknowledged that the Trustee's questionnaire was signed under oath. After the 341 Meeting, the Defendant testified he inventoried all of the items in the horse trailer for the Trustee and cooperated with the Trustee for the remainder of the case. The Defendant stated that he did not intend to hide any assets and that failure to list the property in his schedules was a mistake.

## STATEMENT OF THE CASE

The Trustee objects to the Defendant's Chapter 7 discharge pursuant to § 727(a)(2) and (a)(4)(A). In the Complaint, the Trustee alleges the Court should not grant the Defendant a discharge because the Defendant concealed property with intent to hinder, delay, or defraud an officer of the estate charged with custody of property under the Code pursuant to § 727(a)(2). At the outset of the trial, the Trustee acknowledged he would primarily pursue the objection to the discharge under § 727(a)(4)(A), whereby the Trustee alleges the Defendant knowingly and fraudulently made a false oath or account. Therefore, the Court focuses its analysis accordingly.

The Defendant argues he believed he disclosed all required property at the time that he signed the petition, Trustee's questionnaire, and testified at the 341 Meeting and as such did not knowingly or fraudulently make a false oath or account.

## DISCUSSION

The party objecting to the debtor's discharge bears the burden of proving the discharge should be denied under § 727(a). Fed. R. Bankr. P. 4005; *Farouki v. Emirates Bank Intern., Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994). The objecting party must prove this burden by a preponderance of the evidence. *Farouki*, 14 F.3d at 249. Once a prima facie case establishing the discharge should

6

be denied is made, the burden may then shift to the debtor to offer explanatory evidence, however, "the plaintiff bears the ultimate burden of proof." *West v. Abdelaziz (In re Abdelaziz)*, No. 11-6017 at *2, 2012 WL 359756 (Bankr. M.D.N.C. Feb. 2, 2012) (citing *Farouki*, 14 F.3d at 249)).

Section 727(a)(4)(A) "provides that the court shall grant the debtor a discharge under Chapter 7, unless the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." *Angell v. Williams (In re Williams)*, No. 08-0018 at *8, 2010 WL 364459 (Bankr. E.D.N.C. Jan. 27, 2010). The purpose of § 727(a)(4)(A) "is to insure that debtors provide reliable information to those with an interest in the administration of the debtor's estate." *Kremen v. Slattery (In re Slattery)*, 333 B.R. 340, 344 (Bankr. D. Md. 2005); *see also In re Pratt*, 411 F.3d 561, 566 (5th Cir. 2005) (explaining full disclosure is essential because schedules serve the purpose of "'insuring that adequate information is available for the Trustee and the creditors without need for investigation to determine whether the information provided is true.'") (citation omitted).

For the court to deny the debtor's discharge, the objecting party must show: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Angell*, at *8; *see also Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987).

In the present case, by his own admission, the Defendant failed to list the horse trailer as well as the tools contained within it on his schedules. The omissions of the Chaparral horse trailer and some seventy other items stored in the horse trailer are not de minimis omissions.[5] The Defendant

---

[5] The horse trailer and tools were sold for more than $2,900.00; an amount the Court does not consider de minimis. Courts vary in treatment of omissions of de minimis assets. *Compare Dean v. McDow*, 299 B.R. 133, 140 (Bankr. E.D. Va. 2003) (finding there is no de minimis exception to the Bankruptcy Code's disclosure requirements) *with Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 360 (Bankr. N.D. Ill. 2002) (finding de minimis assets *may* on occasion

also admits he affirmed having listed all the property he owned on the date of the petition in his schedules under oath at the 341 Meeting. Therefore, the Court finds the Defendant made a statement under oath that was false. However, the Defendant contends that the failure to disclose the property was not made with fraudulent intent necessary for denial of discharge under § 727(a)(4)(A). "[C]ourts may deduce fraudulent intent from all the facts and circumstances of a case," as it is unlikely that a debtor will testify that his intent was fraudulent. *Williamson*, 828 F.2d at 252. Facts and circumstances may include "a pattern of nondisclosure." *First Fed. Sav. and Loan Ass'n of Raleigh v. Johnson (In re Johnson)*, 82 B.R. 801, 805 (Bankr. E.D.N.C. 1988).

After considering the facts and circumstances presented in this case, the Court finds that the Trustee has met the burden of proving the Defendant made a false oath by a preponderance of the evidence. The facts clearly establish that the Defendant's statements under oath concerning the property he owned were false on two separate occasions. First, on January 18, 2011, the Defendant declared the information in his schedules to be true and correct under penalty of perjury. Next, on February 2, 2011, the Defendant answered affirmatively when asked if he had declared all property owned by him on the Trustee's questionnaire at the 341 Meeting. These statements were false as it was later determined that the Defendant owned a horse trailer and numerous tools located inside the horse trailer.

The Court also finds that based on the circumstances and pattern of behavior, the Defendant's statements were made with fraudulent intent. At the time that the statements were made, the Debtor knew that they were false. The evidence shows that the Debtor had moved the horse trailer and tools within it from his backyard shed approximately two months prior to filing the bankruptcy petition.

---

be omitted innocently, but that omitting real property from schedules is too substantial to be overlooked as inadvertent) (emphasis added).

The Defendant had multiple opportunities to disclose ownership of the property at issue but did not do so until questioned about it by his spouse's attorney. The Court believes the Trustee would not have learned of the property had it not been for this line of questioning. Furthermore, the Defendant failed to disclose ownership of the horse trailer and other tools, but did list a utility trailer and $300.00 worth of hand-tools he owned in his schedules, suggesting the Defendant knew property of that type should be disclosed in the bankruptcy schedules.

Finally, the statements were related materially to the bankruptcy case because it concerned property the Defendant owned at the time of the petition, which became property of the estate pursuant to 11 U.S.C. § 541. The Trustee testified that he received approximately $2,900.00 from the sale of the property for the benefit of the bankruptcy estate. Therefore, had the property not been discovered, the false statements would have resulted in a negative material impact in the amount of funds generated for the benefit of the bankruptcy estate. Accordingly, the Court finds the Trustee has met the burden of proving the Defendant knowingly and fraudulently made a false oath in connection with the bankruptcy case by the preponderance of the evidence.

The Defendant argues that the failure to disclose the property was merely a mistake as evidenced by the fact that he promptly informed the Trustee of all of the property and assisted the Trustee in his investigation. "While an inadvertent mistake is not cause for the denial of a discharge, a pattern of omissions and inaccuracies . . . indicates a reckless disregard for the truth." *Angell*, at *9 (explaining prompt efforts to amend misstatements prior to the meeting of creditors weighs against finding fraudulent intent but failing to offer explanation for a misstatement or amend schedules shows reckless disregard for the truth). The Defendant's testimony did not corroborate his explanation that failing to list the property in his schedules was a mistake, but instead established

a pattern of behavior from which the Court can infer he intended to conceal the property from the Trustee.

The Defendant testified that he was not aware that he was required to list the horse trailer since he did not have title to it.[6] However, this explanation does not account for the tools inside of the horse trailer. The Defendant testified he loaded the tools in the horse trailer and removed them from his former home less than two months prior to the date of the petition. If the Defendant felt the need to remove tools from his tool shed to protect from theft he surely considered them his property. Furthermore, if the Defendant had the presence of mind to question the horse trailer's title at the time of the petition he could not have simply forgotten about its existence and should have brought it to the attention of his attorney. Therefore, the Defendant's failure to list the property in his schedules, answering affirmatively when asked if he had disclosed all property owned by him, and failure to offer credible explanation for not disclosing the property proves by a preponderance of the evidence to the Court the Defendant had fraudulent intent.

After finding that the Defendant failed to present sufficient evidence to explain the facts and circumstances asserted by the Trustee, the Court also finds that the Defendant's later compliance with the Trustee does not redress the knowingly fraudulent statements. The Trustee as well as creditors must be able to rely on a debtor's schedules and statements without the necessity of investigation beyond normal due diligence in each case. While the Defendant's compliance was helpful to effectuate the sale of property for the estate, it did not come about until after the non-disclosures were discovered by the Trustee. As the Fourth Circuit held, "the right of debtors to a

---

[6]N.C. Gen. Stat. § 20-50 (2005) requires that all vehicles intended to be operated on the highway be titled. Because a debtor failed to have the certificate of title changed to his name, should not be a defense to failing to list one's possessions in the schedules.

fresh start depends upon the honest and forthright invocation of the Code's protections" and full disclosure is "'inherent in the bargain for the discharge.'" *In re Kestell*, 99 F.3d 146, 149 (4th Cir. 1996) (quoting *In re Mascolo*, 505 F.2d 274, 278 (1st Cir. 1974)).

Therefore, the Court finds the Trustee has met the burden of proving by the preponderance of the evidence that the Defendant knowingly and fraudulently made a false oath in connection with his bankruptcy case pursuant to § 727(a)(4)(A).[7] Therefore, the Defendant's discharge is **DENIED**. Judgment shall be entered in favor of the Plaintiff. The Clerk of Court is directed to enter judgment denying the Defendant's discharge.

**SO ORDERED.**

**END OF DOCUMENT**

---

[7] Finding the Trustee met the burden of proving by the preponderance of the evidence that the Defendant knowingly and fraudulently made a false oath pursuant to § 727(a)(4)(A), the Court finds it unnecessary to address denial of discharge pursuant to § 727(a)(2).